## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN RIFE** | : | |
| **Plaintiff** | : | **CIVIL NO.1:CV-08-314** |
| **v.** | : | |
| **BOROUGH OF DAUPHIN, JOSEPH WYNN, JOHN REICHARD, JOHN WINDISH, and TERRY SEARLIGHT** | : | **JUDGE SYLVIA H. RAMBO** |
| **Defendants** | : | |

## M E M O R A N D U M

In this civil rights case, Plaintiff John Rife contends that (1) he was retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq*., and the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951, *et seq*., by the Borough of Dauphin for advocating the hiring of an African-American police officer, and (2) that the Borough of Dauphin deprived him of his federal due process rights under the United States Constitution. Rife also contends that the other Defendants violated 42 U.S.C. §§ 1983 and 1985 by depriving him of his federal due process rights under the First and Fourteenth Amendments to the United States Constitution. The parties have engaged in discovery on these issues, and, on January 30, 2009, Defendants filed a motion for summary judgment. (Doc. 28.) The parties have briefed the issues, and the motion is ripe for disposition.

**I.**        **Background**

       **A.**        **Facts**

           **1. Application for Police Chief**

The following facts are undisputed by the parties unless otherwise noted. Plaintiff John Rife grew up in Susquehanna Township, and worked at his father's gas station which was very close to the Borough of Dauphin ("the Borough"). (Defs.' Ex. 1 in Supp. of Mot. for Sum. J., Rife Dep. 182.) In 2005, the Borough did not have a police department. (*Id.* at 186-187.)

In the fall of 2005, Rife wrote Defendant John Reichard a letter stating that he wanted to come back to the Borough to work as the police chief. (*Id.* at 163.) Rife knew that there was no police department in the Borough at the time of his letter to Reichard, but indicated in his letter that he was willing to work for free in order to maintain his police certification. (*Id.*) After a series of informal communications with Reichard, on February 7, 2006, Rife wrote to the Defendant Terry Searight, the mayor of the Borough, seeking employment with the Borough as the police chief. (Defs.' Ex. 3 in Supp. of Mot. for Sum. J., Feb. 7, 2006 ltr from Rife to Searight.) Rife's letter contained numerous attachments, including a two-page resume and transcript of grades from Franklin University. (*Id.*) The resume submitted by Rife with this letter listed, among other things, the following:[1]

---

[1] Among the disputes between the parties is what Defendants knew of Rife's educational background at the time that he was hired. Rife had several resumes that were provided to the various Defendants before and after his employment. However, it is undisputed by the parties that Rife submitted the resume with the language quoted here along with his February 7, 2006 letter to Defendant Searight. (*See* Rife Dep. 214.)

**EDUCATION:**

1986 B.A., Business Administration
1978 Certification, Police Academy, HACC (Good through 06/07)
1974-2005 Completion of more than 20 military schools, academies, and seminars (Honorably Discharged)

(*Id.*) Rife also submitted a transcript of grades from Franklin University showing that the he earned grades in 16 classes. (*Id.*) The parties do not dispute that Rife purchased the transcript, never attended the classes listed on the transcript, and never attended Franklin University. (Rife Dep. 215, 302.) The parties also do not dispute that neither the transcript nor the resume submitted by Rife with his February 7, 2006 letter mentions that Rife never attended any of these classes. (*Id.* at 216.)

After sending his February 7, 2006 letter to Searight, Rife followed up with numerous telephone calls which ultimately led to his being interviewed in March or April 2006. (Rife Dep. 228, 238.) Rife interviewed with Defendant Searight and two members of Borough council: Mike Welker and Adelaide Furhman.[2] (Defs.' Ex. 18 in Supp. of Mot. for Sum. J., Adelaide Furhman Dep. 7; Defs.' Ex. 2 in Supp. of Mot. for Sum. J., Terry L. Searight Dep. 14.) The parties dispute whether the resume submitted by Rife during the meeting was the same resume that Rife mailed along with his February 7, 2006 letter or whether it was a different resume. Rife contends that at his interview he presented a resume that was different than that which was included with his February 7, 2006 letter to Searight. (*Id.* at 8; Rife Dep. 136; Pl.'s Ex. 4 in Opp. to Defs.' Mot. for Sum. J.) Rife contends that he produced a resume that contains, among other things, the following:

---

[2]Neither Mr. Welker nor Ms. Furhman are Defendants in this action.

**EDUCATION:**

1999 PhD – Business Administration - *Life Experience
1986 *B.A. - Business Administration – Franklin University
1978 Certification, Police Academy, HACC
Certifications Include: ACT 120/Police and ACT 235

(Pl.'s Ex. 4 in Opp. to Defs.' Mot. for Sum. J.)  The two asterisks (*s) on this resume

reference a footnote at the bottom on the page.[3]  That footnote reads: "Converted

military experience and life skills for a degree.  Did not attend the college."  (*Id.*)

Rife contends that he explained at this interview that he never attended Franklin

University and did not attend any of the classes listed on the transcript, but rather

obtained his degree because of his life experience.  (Rife Dep. 136.)  In her

deposition, Adelaide Furhman corroborates Rife's recollection.[4]  (Furhman Dep. 8.)

　　　　Defendants, however, disagree that Rife presented this resume to his

interviewers.  Defendant Searight testified at his deposition that he does not

---

[3]The court will refer to this resume as the "asterisk resume" from here on out.  The court notes that there are actually two resumes in the record that contain asterisks: the one Rife contends that he produced at his interview which indicates that he has a PhD and a B.A. from Franklin University, and another resume that indicated that he has a PhD and a B.A. from Franklin University and that he has an honorary degree from World Christian Fellowship.  The latter is not material to this case, and the court will not discuss it at length.  All references to the "asterisk resume" are to the resume in Plaintiff's Ex. 4 in Opposition to Defendants' Motion for Summary Judgement (Doc. 34-8.)

[4]In her deposition, Furhman stated:

Q:　　Was there a discussion about the notations on this resume?
A:　　Yes, there was.
Q:　　And would you tell us what that discussion – what took place during that discussion?
A:　　I asked Mr. Rife exactly what the converted from military experience to a life degree detailed, and he stated that he used all his military experienced and converted that over and received a degree, but he actually never attended the college.
Q:　　So at the time he did not – he did not indicate that he did attend college?  Did he represent in any way that he did attend college?
A:　　No.

(Furhman Dep. 8.)

remember seeing the asterisk resume. (Searight Dep. 17:11-12.) Searight also testified that he does not remember a discussion occurring at the interview about how Mr. Rife obtained his degree or whether he actually attended Franklin University. (*Id.* at 17:13-17; 18:24-25; 191-5.)

In it undisputed that Rife was hired as the chief of police in April of 2006 and was sworn in on May 4, 2006. (Rife. Dep. 228, 238.) Although he originally volunteered to work for free, Rife was paid $8.00 per hour for his services after the Borough discovered that a police officer must be on a payroll. (*Id.* at 209-210.) Various members of the Borough council had concerns about the cost of police service. (Defs.' Ex. 5 in Supp. of Mot. for Sum. J., November 8, 2006, Borough Council minutes.)

### 2.    Derogatory comments by Defendant Wynn

The parties dispute whether Defendant Wynn ever used derogatory language. At various times both prior to and subsequent to his being hired as police chief, Rife alleges that he heard Defendant Wynn use the word nigger. (Rife Dep. 249.) Rife testified at his deposition that he heard Wynn use that word frequently, and that he repeatedly expressed his dissatisfaction with Wynn's use of the word to Defendant Searight. (Rife Dep. 250-51.) On at least one occasion, Rife expressed his concerns about Wynn's use of the word to the Borough Solicitor, a deputy Dauphin County District Attorney, and another member of Borough Council Derek Stence. (*Id.*) Adelaide Furhman also heard Defendant Wynn use this word. (Doc. 44-2, Adelaide Furhman Decl. ¶ 3.) At some point in early 2006, Furhman was in the Borough Office reading a faxed resume submitted by someone applying for a job with the Borough, when Defendant Wynn took the resume from her and said that "he's

5

probably a . . . nigger," and destroyed it.  (*Id.*)  For his part, Defendant Wynn denies

that any of this occurred or that he has ever used the word nigger.  (Wynn Dep. at 8;

11.)

### 3.    Hiring of Charles Anderson

By August 2006—three months after Rife began as police chief—he

determined that he wanted to hire another officer for the Borough and suggested to

Defendant Searight that the Borough hire Charles Anderson, a longtime friend of

Rife and a recently retired Harrisburg City police officer.  (Rife Dep. 240-41.)

Anderson is African-American.  At various times during August 2006, Rife had

informal conversations with the Defendant Searight and members of Borough

council, including Defendants Wynn and Reichard, about the need to hire another

police officer, specifically about Rife's desire that Anderson be hired.  (Rife Dep.

239.)

Nothing was brought to the Borough Council about the hiring of an additional

police officer generally, or Anderson specifically, until the November 8, 2006

council meeting.  (Rife Dep. 240-41.)   However, at some point in August 2006, Rife

asked Defendant Searight whether Anderson could be sworn in so that he could

maintain his police certification.  Anderson was sworn in by Defendant Searight in

August 2006—three months before he was hired—at Rife's home.  (Rife Dep. 242.)

By that time, Rife believed that he had the support of the council for the hiring of

Anderson, and so he did not believe that it was a problem to have him sworn in prior

to his having been hired.  (*Id.* at 245.)  Specifically, Rife testified at his deposition

that Defendants Wynn and Reichard approved of Anderson being sworn-in during

August of 2006.  (*Id.* at 245-46.)  Defendant Windish was not on Borough Council

at the time that Anderson was sworn in, but he joined in September 2006.  (*Id.* at 246; Defs.' Ex. 6 in Supp. of Mot. for Sum. J., John Windish Dep. 20.)

At the November 8, 2006 Borough council meeting, Rife officially requested for the first time the hiring of Anderson as a second, part-time police officer.  (Rife Dep. 238.)  That evening, Rife spoke facing the audience of residents.  (Doc. 44-2, Adelaide Fuhrman Decl. ¶ 6.)  According to Plaintiff, there was a record public attendance at that meeting because of the perceived opposition by the Borough Council to the hiring of Anderson.  (*Id.* ¶¶ 5, 11.)  During the meeting, councilperson Trudy Kopenhaver said to Rife that "[w]e don't want to change the way we do things up here," which Rife and Furhman took as opposition to hiring Anderson.  (*Id.* ¶ 7.)  Upon hearing Ms. Kopenhaver say this, a resident at the meeting, Robert Youngblood, shouted, "[i]t's because he is a . . . nigger, isn't it?" (*Id.* ¶ 9.)  After public and executive sessions, the Borough Council voted unanimously to hire Anderson as a part-time police officer.[5]  (Windish Dep. 22.)

### 4.    Events after November 8, 2006 Borough Council Meeting

Prior to the November 8, 2006 Borough Council meeting, Rife received excellent job performance evaluations.  (Rife Dep. 277.)  Between August 2006—when Anderson was sworn in—and November 2006—when Anderson was unanimously hired as a part-time police officer—Rife testified that he did not suffer any harassment by any of the Defendants.  (Rife. Dep. 277-79.)

---

[5]Although it goes without saying, because the vote was unanimous all of the Defendants who are councilpersons—Joseph Wynn, John Reichard, and John Windish—voted in favor of hiring Anderson.  Trudy Kopenhaver, a non-defendant, but the council person accused of making racially insensitive remarks during the hearing, also voted in favor of hiring Anderson.

While the parties disagree about the meaning of what happened after the November 8, 2006 council meeting—i.e., whether any actions taken by Defendants were retaliatory—they appear to be in agreement about the basic series of events. After that meeting, Defendants Searight and Windish informed Rife that he should not attend any more council meetings because of the contentiousness of the November 8, 2006 meeting. (Rife Dep. 271). Various members of council, but Defendant Windish specifically, had concerns about the way that Rife conducted himself at the November meeting. Windish also believed that there was the need for Rife to provide better documentation in the form of police logs and time-sheets. (*Id.*) At some point after the November meeting, Windish, who is on the personnel committee, requested Rife's personnel file from Searight, but he did not request any other employee's personnel file. (*Id.* 274-75; Searight Dep. 31.) After reviewing Rife's personnel file, Windish discussed with Searight concerns that he had about Rife's education. Specifically, Windish believed that Rife falsified his resume because Franklin University did not exist as a school authorized to grant degrees in the state of Pennsylvania. (Defs.' Ex. 8, Feb. 13, 2007 Ltr. from Carol Gisselquist to Jeffrey Engle, Esquire.)

As a result of the conversations between Searight and Windish, on February 20, 2007, Searight made the decision to suspend Rife without pay until the March 6, 2007 meeting of the Borough Council, at which time he would recommend that Rife be terminated. (Defs.' Ex. 9, Feb. 20, 2007 Ltr. from Terry Searight to John Rife.) The stated basis for this suspension was Rife's alleged falsification of his educational credentials. (*Id.*) Rife requested that a hearing be scheduled, and on May 2, 2007, the Borough held a hearing on Rife's suspension and the issue of

Rife's termination. Rife was represented at that hearing by attorney Michael Sheldon. (Defs.' Ex. 10 in Supp. of Mot. for Sum. J., Tr. of Proceedings, May 2, 2007, at 1.) Rife was unhappy with the way that the hearing was conducted; specifically, he did not like that Adelaide Furhman was sequestered and was not permitted to participate in the hearing because of perceived bias in favor of Rife, but that John Windish who had a perceived bias against Rife was permitted to participate. (Rife Dep. 288-289.) After 5.5 hours, the hearing was adjourned to be continued at a future date. (Tr. of Proceedings, May 2, 2007, at 278.) However, on May 11, 2007, Rife resigned as chief of police. (Defs' Ex. 11 in Supp. of Mot. for Sum. J., May 11, 2007 Rife Resignation Ltr.) The Borough accepted Rife's resignation on June 21, 2007; no further hearings were conducted and no decision was made by the Borough Council or the mayor about whether Rife should be terminated. (Defs.' Ex. 12 in Supp. of Mot. for Sum. J., Jun. 21, 2007 ltr from John Reichard to John Rife.)

## B. Procedural history

Defendants filed their motion for summary judgment, statement of material facts, and brief in support on January 30, 2009. (Docs. 28-30.) Plaintiff filed his brief in opposition to Defendants' motion for summary judgment, and supporting documents, on February 28, 2009. (Doc. 34.) Defendants filed their reply brief on March 13, 2009. (Doc. 35.) On June 18, 2009, after reviewing the parties filings and concluding that additional briefing was needed on two issues, the court issued an order requiring supplemental briefing. On June 29, 2009, Defendants filed their supplemental brief and supporting exhibits. (Doc. 42.) On that same day Defendants filed an amended set of exhibits. (Doc 43.) On July 9, 2009, Plaintiff

filed his supplemental brief and supporting exhibits. (Doc. 44.) Defendants' motion is ripe for disposition.

## II.  <u>Legal Standard</u>

"In an employment discrimination case, the burden of persuasion on summary judgment remains unalterably with the employer as movant.  The employer must persuade [the court] that even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).  Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.  <u>Discussion</u>

Both Plaintiff's pleadings and his brief in opposition to Defendants' motion for summary judgment suffer greatly from a lack of specificity, and are laden with generalities heaped upon conclusory statements unsupported by the record.  These defects are fatal to Plaintiff's case on all counts, and for the reasons that follow the court will grant Defendants' motion for summary judgment.

### A.  <u>Title VII claims</u>

In Count I of his Amended Complaint, Plaintiff alleges that Defendant Borough violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951 *et seq.*  It is unclear from Plaintiff's Amended Complaint whether he is asserting

a discrimination claim under § 2000e-2(a), the anti-discrimination provision, or an anti-retaliation claim under § 2000e-3(a). However, in his brief in opposition to summary judgment, Plaintiff does not respond to Defendants' arguments that he has failed to come forward with evidence in support of an anti-discrimination claim under § 2000e-2(a), and the court takes this as Plaintiff's indication that he is asserting only a retaliation claim under Title VII. In any event, even if Plaintiff had meant to assert an discrimination claim in his Amended Complaint, his failure to brief this claim in opposition to summary judgment or otherwise come forward with evidence to support the claim constitutes a waiver of that claim entitling Defendants to summary judgment.[6] *See National R.R. Passenger Corp. v. Pa. Public Utility Com'n*, 342 F. 3d 242, 259 n. 14 (3d Cir. 2003) (stating that a party who fails to adequately brief an issues waives that claim); *see also* Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in his own pleading . . . .")

To state a claim under Title VII, Plaintiff must allege and prove that his employer had fifteen or more employees for each working day of twenty or more calendar weeks in the current or preceding year. 42 U.S.C. § 2000e(b). The Supreme Court has determined that this numerical qualification is an essential

---

[6]Even if Plaintiff's claim were not waived, the record before the court is devoid of any evidence in support of a discrimination claim under Title VII. To bring a discrimination/harassment claim, Plaintiff must establish that, among other things, he suffered discrimination because of his membership in a protected class of persons. In his complaint, Plaintiff asserts that he was harassed because he advocated for the hiring of an African-American police officer, not because he was the member of a protected class of persons. Moreover, this sort of allegation fits squarely within the framework of Title VII's the retaliation provision not its discrimination provision.

ingredient of a claim for relief under Title VII, but does not implicate the court's subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006).

One of the issues that concerned the court after reviewing the initial briefing by the parties was the lack attention paid to this element of Plaintiff's case. In their motion, Defendants raised the issue by stating that Plaintiff had not pled and proven that Defendants employed more than fifteen persons. In response, Plaintiff baldly asserted that Defendant did employ more than fifteen people. In their supplemental brief in response to the court's June 18, 2009 order, Defendants flesh out their argument and provided an affidavit from the Borough Secretary Michelle McBurney. (Doc. 44-2, Michelle McBurney Aff.) McBurney's affidavit, as well as payroll records accompanying her affidavit, unequivocally indicate that from 2005 through 2008 the Borough employed no more than 10 persons in any year. (*Id.*) In his supplemental brief, Plaintiff concedes that Defendant Dauphin Borough never employed more than 15 people: "While Plaintiff asserts there was a least one other employee in 2006 not listed by Defendants . . . the Defendants' assertion that there were less than fifteen employees is correct." (Doc. 44, Pl.'s Suppl. Br. in Opp. to Defs.' Mot. for Sum. J. at 2.)

In light of Plaintiff's concession that the Borough of Dauphin never employed more than 15 people, Plaintiff's Title VII claim fails as a matter of law and the court will grant Defendants' motion for summary judgment on these claims. *See Arbaugh*, 546 U.S. at 516 (stating that the numerical thresh hold found in 42 U.S.C. § 2000e(b) is an element of a plaintiff's claim for relief under Title VII).

13

## B.   PHRA claims

In addition to claims under Title VII, Plaintiff also brought claims against Defendants pursuant to the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 *et seq.* Although the court could decline to exercise its supplement jurisdiction over these claims, however, as a matter of judicial economy the court will address Plaintiff's PHRA claims here.

The standard for analyzing whether Plaintiff has stated a PHRA claim is identical to the standard for Title VII claims because Pennsylvania courts have construed the protections of the two acts interchangeably. *See Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001) (citations omitted); *see also Frog, Switch & Mfg. Co. v. Pa. Human Relations Comm'n*, 885 A.2d 655, 660 n.4 (Pa. Commw. Ct. 2005). The definition of the term "employer" in the PHRA contains a numerical threshold of only four persons, unlike Title VII which requires fifteen. *Compare* 43 Pa. Stat. Ann. § 954(b) *with* 42 U.S.C. § 2000e(b). It is undisputed that Defendant Borough of Dauphin employed at least four persons during the period of time relevant to this case. (*See* Doc. Doc. 42-2, Michelle McBurney Aff. and payroll records.) Thus, the court will analyze the merits of Plaintiff's anti-retaliation claims under the PHRA.[7]

Under the anti-retaliation provision of the PHRA, Plaintiff must come forward with some evidence establishing that a *prima facie* case of retaliation exists.

> The test for retaliation under Section 5(d) is a shifting burden. The complainant has the initial burden of proving that (1) he or she engaged

---

[7]The parties do not address Plaintiff's PHRA claims separately from his Title VII claims. However, because Plaintiff asserts only an anti-retaliation claim under Title VII, the court will address Plaintiff's PHRA claims under Section 5(d), 43 P.S. § 955(b)(5)(d), the PHRA's anti-retaliation provision.

in protected activity; (2) the employer was aware of the protected activity; (3) after engaging in such activity, the complainant suffered adverse employment action; and (4) a causal connection between the participation in the protected activity and the subsequent adverse employment action.

*Frog, Switch & Mfg. Co.*, 885 A.2d at 660 n.4 (citations omitted). The parties gloss over the first prong of this analysis in addressing Plaintiff's Title VII claims, and consequently Plaintiff's PHRA claims, but it is here where these claims die.

In order to satisfy the PHRA's protected activity requirement, Plaintiff must demonstrate that Defendants discriminated against him either "[1] because [he] . . . opposed any practice forbidden by this act, or [2] because [he] has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 Pa. Stat. Ann. § 955(b)(5)(d). Like the analogous provisions in Title VII, the first clause is known as the opposition clause, and the second is known as the participation clause.

In their initial briefs, the parties did not address whether Plaintiff engaged in protected activity. However, pursuant to the court's June 19, 2009 order, the parties submitted supplemental briefing on this issue. In his supplemental brief in opposition to summary judgment, Plaintiff states that his claim of retaliation is "based on the protection provided by the opposition clause as set forth in 42 U.S.C. § 2000e-3(a)." (Doc. 44 at 2.) Presumably, Plaintiff's claim is also brought pursuant to the opposition clause of the PHRA as well. The court will not address the participation clause of the PHRA because Plaintiff failed to brief it and has framed his cause of action as defined solely by the opposition clause. *See Gorum v. Sessions*, 561 F.3d 179, 185 n.4 (3d Cir. 2009)(*citing Laborers' Intern. Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir.1994)

("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue ... will not suffice to bring that issue before this court." (internal quotations omitted))). Thus, the court will analyze the evidence the in the light most favorable to Plaintiff to determine whether there is evidence that Plaintiff engaged in protected activity under the opposition clause of the PHRA.

## 1.    <u>Opposition Clause</u>

The opposition clause makes it unlawful for an employer to discriminate against any employee "because [he] . . . opposed any practice forbidden by this act." 43 Pa. Stat. Ann. § 955(b)(5)(d). While the record reflects that Plaintiff opposed Defendant Wynn's use of derogatory language by complaining to Defendant Searight and others, *see supra* Part I.A.2, the anti-retaliation provision does not prohibit retaliation for speaking out against prejudice that has no nexus to employment discrimination and the unequal treatment of employees on the basis of their race.[8]  *See e.g., Wimmer v. Suffolk County Police Dep't.*, 176 F.3d 125 (2d Cir. 1999) (holding that the plaintiff's reports of his fellow police officers' discriminatory treatment of minority citizens was not protected activity under Title VII); *Denham v. Saks*, 2008 WL 2952308, 104 Fair Empl. Prac. Cas. (BNA) 59 (N.D. Ill. July 30, 2008) (holding that a store security employee's opposition to alleged racial profiling of customers was not protected because Title VII addresses unequal treatment of employees, not customers). While it is admirable that Plaintiff spoke out against the use of derogatory language by Defendant Wynn, it is clear from the record that this opposition was not connected to any unequal treatment of

---

[8]Because the analysis under the PHRA and Title VII are identical, cases interpreting Title VII's anti-retaliation provisions are instructive here.

employees or any other activity protected activity under Title VII or the PHRA. Rather, Plaintiff spoke out because this speech offended him. Even assuming that Plaintiff was retaliated against for speaking about Defendant Wynn's use of derogatory language, Title VII's, and consequently the PHRA's, anti-retaliation provision is not a catch-all for folks who face retaliation for speaking out against racial prejudice generally, but rather its purpose is to ameliorate employment discrimination. Given these facts, Plaintiff's opposition to Defendant Wynn's use derogatory language is not protected activity under the PHRA.

It is also clear from the record that none of the other conduct by Plaintiff is protected activity under Title VII or the PHRA. The thrust of Plaintiff's argument is that he was retaliated against because he advocated and supported the hiring of Anderson in the face of opposition by the Borough Council. In support, Plaintiff points to his own deposition and unsworn affidavit, the unsworn declaration of Thomas Peterson, the deposition testimony and unsworn affidavit of Adelaide Furhman, and a survey completed by Defendant Searight. Taken together, and in a light most favorable to Plaintiff, a reasonable jury could conclude that some members of Borough Council exhibited racial prejudice. However, this alone is insufficient for Plaintiff to proceed with his Title VII and PHRA claims. There is no evidence in the record that Plaintiff's comments at the November 8, 2006 meeting or any other time were in opposition to past or present unequal treatment of African-Americans by Defendant Borough or any of the other Defendants. Nothing in the record demonstrates either directly or inferentially that Plaintiff's advocacy of Anderson was meant to ameliorate past discrimination or correct current unequal treatment of African-American or other minority employees.

While Plaintiff says in his deposition that the minutes of the November 8, 2006 meeting do not capture all of the comments that he made that evening, when asked to fill-in what was missing, he could point to nothing he said—as opposed to the comments of others— that was not contained in the minutes.[9] It is clear from the record that Plaintiff advocated the hiring of Anderson, but this alone is not protected activity under the PHRA because it is not an action that opposed a "practice forbidden by [the PHRA]." 43 Pa. Stat. Ann. § 955(b)(5)(d). There is no evidence in the record that Plaintiff's conduct was in any way in opposition to Defendants' practices—past or present—that were unlawful under Title VII or the PHRA. Mere

---

[9]Plaintiff testified, in response to questions from his attorney, at his deposition as follows:

Q:    Okay.  Is this a complete description of the discussion regarding your police report?
A:    No.
Q:    What items are missing?
A:    A lot of the conversation and dialogue between residents and myself with Mr. Windish and Trudy Kopenhaver and John Reichard's [sic] and my conversation just touched the surface.  The – this – there's a lot missing.
Q:    What – what important points were missing?
A:    Robert Youngblood yelled at and pointed his finger as Council member Trudy Kopenhaver and stated, It's because he's a nigger, isn't it?  referring [sic] to that's why you don't want to hire him.
Q:    Okay.
A:    That conversation happened.
Q:    Okay.
A:    She gave a reply.
Q:    Which was?
A:    Johnny, you know we don't want to change the way we do things up here.
Q:    Okay.
A:    I then reprimanded Youngblood and the other residents yelling at the Council and I said, Guys, you need to stop it.  We need to respect the Council.

(Rife Dep. 315:1-24.)  This is the only thing that Plaintiff points to that hints to racial animus on the part of Borough Council when it was considering the hiring of Anderson.  However, even if the comments of Robert Youngblood were considered protected activity under Title VII or the PHRA he is not a plaintiff in this case and there is no evidence suggesting that he is employed by the Borough such that he would be protected under these statutes.  Moreover, Trudy Kopenhaver is not a Defendant in this case, and the record reflects that she, like all of the Borough Council members, voted in favor of hiring Anderson.

racial animus unconnected to the unequal treatment of employees on the basis of race is not unlawful under Title VII or the PHRA. The fact that Anderson was hired by a unanimous vote by the Borough Council at the November 8, 2006 meeting also mitigates against Plaintiff because his speech, while not in opposition to any past unequal treatment of employees by Defendants, apparently served its intended purpose of hiring an additional police officer.

### 2. **Plaintiff has failed to establish a _prima facie_ case of retaliation under the PHRA or Title VII**

Plaintiff has conceded that he does not have a claim under Title VII, and has failed to come forward with any evidence that he engaged in activity protected by the PHRA. Thus, the court need not address whether Defendants took adverse action against him, or any of the other _McDonnell-Douglas_ burden shifting factors that are ordinarily relevant in employment discrimination cases. Plaintiff has failed to make a sufficient showing regarding an essential element upon which he will bear the ultimate burden of proof at trial, and all other facts are necessarily immaterial, and, therefore the court will grant Defendants' motion for summary judgment on Plaintiff's Title VII claims. _See Celotex_, 477 U.S. at 321.

### C. **Section 1983**

In Counts II through IV of his Amended Complaint, Plaintiff asserts that Defendants Wynn, Windish, Searight and Reichard violated his rights under 42 U.S.C. § 1983 (Count II); Defendant Borough of Dauphin violated Defendant's rights under the First and Fourteenth Amendments to the United States Constitution (Count III); and that Defendants Wynn, Windish, Searight, and Reichard violated his

First and Fourteenth Amendment due process rights and thereby violated § 1983 (Count IV).

> Section 1983 states in relevant part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (internal quotation omitted). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.' " *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Thus, Plaintiff must first demonstrate that Defendants violated his rights under the Constitution or the laws of the United States. Since all of Plaintiff's claims turn on whether any Defendant violated his rights under either the First or Fourteenth Amendments the court will address each of these claims.

### 1.   **First Amendment**

Plaintiff was a public employee at the time his First Amendment rights were allegedly violated.  A public employee's retaliation claims pursuant to § 1983 for an alleged violation of the First Amendment is analyzed under a three-step process: (1) Plaintiff must demonstrate that he engaged in protected activity, (2) and that the protected activity was a substantial or motivating factor in the alleged retaliatory action, and finally (3) Defendants may defeat Plaintiff's claim by demonstrating that the same action would have been taken in absence of the protected activity.  *Green v. Phila. Housing Auth.*, 105 F. 3d 882, 885 (3d Cir. 1997) (*citing Swineford v. Snyder*, 15 F.3d 1258, 1270 (3d Cir. 1994)).  To meet the first prong of this test—that he engaged in protected activity—Plaintiff must satisfy the test set out in *Pickering v. Board of Educ. of Twp. High Sch. Dist. 205, Will County*, 391 U.S. 563 (1968) and its progeny.  *Pickering* requires the court to determine, among other things, whether the employee spoke as a citizen on a matter of public concern.  If the answer to that question is no, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech."  *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006).  Based on a review of the record before it, the court concludes that Plaintiff's speech was not on a matter of public concern, and Plaintiff has no cause of action under the First Amendment.[10]

---

[10]The second *Pickering* inquiry, which court will not address in this case, is whether Defendants had an adequate justification for treating Plaintiff differently for any other member of the general public.  *See Pickering*, 391 U.S. at 568.  The court need not address this inquiry because Plaintiff has failed to adduce evidence that he spoke as a citizen on a matter of public concern.

### a.    Requesting a hearing

In his brief in opposition to summary judgment, Plaintiff argues that he exercised his First Amendment rights when he requested a hearing subject to Section 814 of the Police Tenure Act challenging his suspension.  (Pl.'s Br. in Opp. to Mot. for Sum. J. at 11.)  As Defendants correctly point out, there is no evidence in the record that Plaintiff's request for a hearing was ever made publically or that the hearing was intended to address anything other than his suspension by the Borough of Dauphin.  Only so long as government employees are speaking as citizens about matters of public concern is their speech entitled to protection under the First Amendment.  *See Pickering* 391 U.S. at 568.  Plaintiff has come forward with no evidence suggesting that Plaintiff's act of requesting a hearing pursuant to the Police Tenure Act concerns anyone other than Plaintiff—i.e., that it was on a matter of public concern.  The mere fact that Plaintiff believes that Defendants were motivated to suspend him because he advocated for the hiring of an African-American police officer does not transform his request for a hearing challenging that suspension into protected speech.  His actions were narrow in that they involved only him and his due process rights under the Police Tenure Act, and Plaintiff has no First Amendment cause of action for any of the Defendants' reactions to his speech.  *See Garcetti*, 547 U.S. at 418 (reiterating that if an employee did not speak as a citizen on a matter of public concern "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech").

### b.    Comments at November 8, 2006 meeting

Although Plaintiff does not directly address it in his brief in opposition to Defendants' motion for summary judgment, the court believes that it is necessary to

address whether Plaintiff's speech at the November 8, 2006 council meeting was protected speech under *Pickering*. In light of the Supreme Court's decision in *Garcetti*, the court finds that it was not protected speech. In that case, Ceballos, an assistant prosecutor in the Los Angeles County District Attorney's office, alleged that he was the victim of retaliatory actions by his employer after he wrote two memos to his supervisor and attending a meeting where he recommended that a prosecution be dismissed because of a potentially fabricated affidavit in support of a search warrant. At the meeting, Ceballos faced stiff opposition to his suggestion that the prosecution be dismissed, and his supervisors decided to proceed over Ceballos' objection. In the aftermath of these events, Ceballos alleged that he was reassigned to another office, demoted, and denied a promotion in retaliation for having written his memos. Ceballos sued alleging that his employer violated his First and Fourteenth Amendment rights. Ultimately, the Supreme Court ruled that Ceballos' speech was not protected under the First Amendment because "his expressions were made pursuant to his duties as a calendar deputy." *Garcetti*, 547 U.S. at 421. In so finding, the Court held that "when public employees make statement pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." *Id.*

The holding in *Garcetti* is controlling in this case. All of the facts surrounding Rife's speech at this meeting suggest that Rife spoke not as a citizen, but as a part of his official duties as chief of police. He was not advocating for the hiring of Anderson as a citizen, rather, as the sole police officer in the Borough at the time, and as the chief of police, he petitioned the Borough for help and believed

that Anderson was the right person for the job. As discussed more fully in Part III.B., above, there is no evidence before the court suggesting that Plaintiff did anything other than speak of Anderson's qualifications for the job at this meeting.

When he made his speech concerning Anderson he apparently made it facing the audience, not the Borough Council as one might expect a citizen to do when addressing a matter of public concern. Rife made the pitch for hiring Anderson in the middle of his "Chief's Report," a report that he gives at every Borough Council meeting. The fact that on this night, the "Chief's Report" was presented during the section of the Council meeting reserved for public comments is immaterial. Plaintiff testified at his deposition, and the minutes of the November 8, 2006 meeting reflect, that Plaintiff made his report during the public comments period because he had another commitment that evening and could not attend the entire Council meeting. (Rife Dep. 258.) Although there were members of the public present who also advocated for the hiring of Anderson, the record is devoid of any indication that Plaintiff acted in any other capacity on that evening than as chief of police. Given these facts, the court finds that Plaintiff's speech at the November 8, 2006 meeting is not entitled to protection under the First Amendment.

### c. First Amendment summary

Consistent with the foregoing, the court finds that Plaintiff has not adduced evidence that would allow a reasonable jury to conclude that any of his speech was protected activity under *Pickering*, and therefore, Defendants are entitled to summary judgment on Plaintiff's § 1983 claims to the extent that Plaintiff asserts a claim under § 1983 for a violation of the First Amendment, as well as any other

claim asserted by Plaintiff that is predicated upon a violation of the First Amendment.

### 2. **Fourteenth Amendment**

Plaintiff also argues that Defendants violated § 1983 when it deprived him of the due process required under the 14th Amendment. Specifically, Rife argues that Defendants violated his right to an impartial hearing after his suspension because the Borough Council chose to sequester Furhman from deliberation, but chose to allow Defendant Windish and the Borough solicitor to participate despite Plaintiff's objection. Plaintiff argues that he was denied his right to procedural due process, and, as a result of this fundamentally unfair hearing, he was forced to resign.

"To state a claim under [section] 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

In Pennsylvania, the Police Tenure Act, 53 Pa .Stat. Ann. § 811, *et seq*. provides extensive procedural protections to Plaintiff, including the right to demand a public hearing and the right to appeal the results of a public hearing to the Pennsylvania Court of Common Pleas. 53 Pa. Stat. Ann. §§ 814, 815. As such, Plaintiff had a property interest in his continued employment as Chief of Police.

Once it has been established that a substantive right has been affected, the court must determine what process is due the plaintiff. *Hill*, 455 F.3d at 233-34. The Police Tenure Act provides adequate procedural safeguards for a full evidentiary hearing subsequent to suspension or termination. *See Kelly v.*

*Warminster Twp. Bd. of Supervisors*, 404 A.2d 731 (Pa. Commw. Ct.1979); 53 Pa .Stat. Ann. §§ 814, 815. In the record before the court, it is undisputed that Plaintiff was afforded a hearing with regard to his suspension, and, in fact, he was represented by counsel at that hearing. (Tr. of Proceedings, May 2, 2007, at 1.) Plaintiff did not like the way that the hearing was proceeding because of what he perceived as the unfairness of the make up of the hearing panel; however, instead of proceeding with the hearing he chose to resign. The court need not, and will not, determine whether Plaintiff's hearing was or was not biased against him. If Plaintiff believed that the due process hearing was a sham, he could have finished the hearing and appealed any decision to the Dauphin County Court of Common Pleas pursuant to § 815 of the Police Tenure Act; Plaintiff chose not to do so. Because the Police Tenure Act provided Plaintiff with a post-deprivation right to appeal to the Pennsylvania courts, as a matter of law, he has no claim that he was denied his right to procedural due process. *See Hill*, 455 F.3d at 234 ("To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that . . . the procedures available to him did not provide due process of law." (internal quotations and citations omitted)). Plaintiff has adduced no evidence from which a reasonable jury could conclude that he was denied due process of law by the fact that he chose to forgo the procedural protections provided by the Police Tenure Act.

Plaintiff's resignation does not alter the court's decision, to the contrary, it strengthens it. In his brief in opposition to summary judgment, Plaintiff asserts that because the hearing was unfair he was forced to resign, and, therefore, constructively discharged. There is no foundation in the record for Plaintiff's assertion. "Employee resignations and retirements are presumed to be voluntary . . .

until the employee presents evidence to establish that the resignation or retirement was involuntarily procured." *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999) (citations omitted). Furthermore, "[i]f an employee [resigns] of his own free will, *even though prompted to do so by some action of his employer*, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights." *Id.* (emphasis added).

There are only two circumstances in which an employee's resignation will be deemed involuntary for due process purposes: "(1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtained the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *Id.* at 228 (citations omitted). Neither of these exceptions is present in this case. There is noting in the record suggesting that any Defendant coerced Plaintiff to resign or that he did so under duress. Furthermore, there is no evidence in the record suggesting that any Defendant deceived or misrepresented a material fact to Plaintiff.[11]

Quite simply, Plaintiff has not adduced any evidence from which a reasonable jury could conclude that he was deprived of the due process required by the Fourteenth Amendment. Therefore, Defendants are entitled to summary judgment

---

[11]When asked in his deposition whether he was aware that he had the right to appeal any decision by the Borough of Dauphin to the Court of Common Pleas Plaintiff said that he was unaware of this right. (Rife Dep. 288.) However, there is nothing in the record suggesting that Defendants were in any way responsible for Plaintiff not understanding that he had the right to appeal any decision made by the Borough of Dauphin.

on Plaintiff's Fourteenth Amendment claims, including Plaintiff's claims under § 1983.

## C. **Section 1985**

Plaintiff alleges that Defendants violated 42 U.S. C. § 1985 by conspiring to deprive him of due process. Under § 1985, Plaintiff must demonstrate that (1) there was a conspiracy of Defendants designed to deprive Plaintiff of equal protection of the law; (2) Defendants committed an overt act in furtherance of that conspiracy; (3) Plaintiff's rights were violated as a result of this action; and, (4) Defendants' actions were motived by racial or otherwise class-based invidiously discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971). Proof of conspiracy is an essential element of an action under 42 U.S.C. § 1985, and it is insufficient for Plaintiff to show merely that Defendants had a common goal or acted in concert; rather, Plaintiff must show through specific facts that Defendants reached an understanding or agreement to violate Plaintiff's civil rights. *See Martin v. Delaware Law Sch. of Widener Univ.*, 625 F. Supp. 1288 (D. Del. 1985), *judgment aff'd*, 884 F.2d 1384 (3d Cir. 1989). In order to prove the existence of a civil conspiracy, Plaintiff must show that the conspirators agreed to inflict injury upon him; in other words, that they acted with a single plan, the general nature and scope of which was known to each conspirator. *See Green v. Benden*, 281 F.3d 661 (7th Cir. 2002).

The record before the court is completely devoid of any evidence supporting a claim of conspiracy. Plaintiff has come forward with no evidence that Defendants acted in concert to violate Plaintiff's civil rights. The mere fact that Defendants may have deliberated about whether to suspend Plaintiff is insufficient to state a claim

under § 1985. Moreover, as the court noted previously, the undisputed material facts of record fails to demonstrate any deprivation of any federally protected right, and "[t]he absence of a § 1983 deprivation of rights precludes a § 1985 conspiracy claim predicated on the same allegations." *Miles v. Griffy,* No. 00-2147, 2001 WL 1152984, *4 (E.D. Pa. 2001). Accordingly, Defendants are entitled to summary judgment on Plaintiff's § 1985 claims.

## IV.    Conclusion

Plaintiff has adduced insufficient evidence demonstrating a *prima facie* case of retaliation under either Title VII or the PHRA. Plaintiff has also produced insufficient evidence from which a reasonably jury could conclude that Defendants violated either his First or Fourteenth Amendment rights, and, as such, Plaintiff has no claim under §§ 1983 and 1985. Put simply, the undisputed facts demonstrate that Defendants are entitled to summary judgment on all counts. The court will issue an order consistent with this memorandum.

s/Sylvia H. Rambo
United States District Judge

Dated:  July 17, 2009.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JOHN RIFE     :
         :
   Plaintiff   :  CIVIL NO.1:CV-08-314
         :
 v.       :
         :
BOROUGH OF DAUPHIN, :  JUDGE SYLVIA H. RAMBO
JOSEPH WYNN, JOHN  :
REICHARD, JOHN WINDISH, :
and TERRY SEARLIGHT  :
         :
   Defendants  :

## O R D E R

In accordance with the attached memorandum of law, **IT IS HEREBY ORDERED THAT**:

 (1)  Defendants' motion for summary judgment, (Doc. 28), is **GRANTED**;

 (2)The clerk of court is directed to enter judgment in favor of Defendants and against Plaintiff on all counts, and close the case.


        s/Sylvia H. Rambo
        United States District Judge

Dated:  July 17, 2009.